IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
          Plaintiff,

vs.                                No. CR 14-415 JP

ANTHONY CHEUN,
          Defendant.

**DEFENDANT ANTHONY CHEUN'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

    COMES NOW, Anthony Cheun by and through his counsel of record, Erlinda O. Johnson, Esq., and hereby respectfully submits the following reply to the government's response to defendant Cheun's motion to suppress evidence:

>*The Encounter with Mr. Cheun Quickly Escalated into a Seizure*
>*Thus Rendering any Purported Consent Involuntary*

    A consensual encounter is simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement official.  *United States v. Guerrero-Espinoza,* 462 F.3d 1302, 1308 (10th Cir. 2006) (quoting *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999)).  However, the government bears the burden of establishing voluntary consent, and this "burden cannot be discharged by showing no more than acquiescence to a claim of authority."  *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968); *Kaupp v. Texas*, 538 U.S. 626 (2003).

1

"Voluntariness is a question of fact to be determined from all the circumstances" *Schneckloth v. Bustamonte,* 412 U.S. 218, 248-49, 93 S.Ct. 2041 (1973). The central question is whether "a reasonable person would believe he was free to leave or disregard the officer's request." *United States v. Manjarrez,* 348 F.3d 881, 885-86 (10th Cir.2003). When consent is granted only in submission to a claim of lawful authority—then courts have found the consent invalid and the search unreasonable. *See, e.g., Bumper v. North Carolina,* 391 U.S. at 548-49.

Courts have identified a number of factors that suggest that an encounter was not consensual, including the "threatening presence of several officers," the "use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory," the "prolonged retention of a person's personal effects such as identification," the "absence of other members of the public," and the officer's failure to advise the defendant that she is free to leave. *United States v. Hill,* 199 F.3d 1143, 1147-48 (10th Cir.1999); *see also United States v. Broomfield,* 201 F.3d 1270, 1274 (10th Cir.2000).

Here, a number of the foregoing factors were present. There were at least two officers present when Mr. Cheun was purportedly asked to consent to search. After Mr. Maddaleni was arrested, Mr. Cheun's encounter with agents turned into a seizure.

There were at least two agents standing in very close proximity to Mr. Cheun. His egress was blocked by one of the agents. Agent Small failed to advise Mr. Cheun he was free to decline his request to further questioning or to search his bag. While the encounter continued on the train, there is no evidence that there were other members of the public round. By this point, there was an official show of authority reinforced by not only the presence of several officers but also by the arrest of Mr. Maddaleni.

While the government argues that the arrest of Mr. Maddaleni did not convert the encounter with Mr. Cheun into a seizure. While the government relies on *United States v. Drayton*, 536 U.S. 194, 122 S.Ct. 2105 (2002), for that proposition, Drayton, is readily distinguishable from the facts of this case. In Drayton, the defendant unequivocally agreed to be searched. In contrast, here Mr. Cheun was noticeably hesitant when rapidly assailed by Agent Small with directives to tell him where his (Cheun's) bag was located. That was hardly a calm request to Mr. Cheun as to whether he wished to continue answering questions. Agent Small ordered Mr. Cheun where to stand during the search. Agent Small's commands clearly would communicate to a person he was not free to refuse the Agent's imperative questions. It is important to note that after Mr. Maddaleni was arrested, Agent Small's tone changed. His breathing became noticeably heavier, the speed of his speech increased and the tone of his speech turned more stern.

An encounter between a law-enforcement officer and a citizen is no longer consensual when there has been a show of official authority that would cause a reasonable person to believe he or she is not free to leave.  *See Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319 (1983); *United States v. Sanchez,* 89 F.3d 715, 718 (10th Cir.1996). *Accord United States v. Williams,* 356 F.3d 1268, 1274 (10th Cir.), *cert. denied,* 543 U.S. 852, 125 S.Ct. 264, 160 L.Ed.2d 85 (2004).  The determination whether an encounter is no longer consensual "is based on how a reasonable person would understand the situation."  *United States v. Rogers,* 391 F.3d 1165, 1169 (10th Cir.2004).

After Mr. Maddaleni was arrested, Agent Small ordered Mr. Cheun to produce his bag by telling him, "[y]our Partner is under arrest – Do you have a suitcase with you?"  Agent Small directed Mr. Cheun, "[w]hich bag, show me which bag is yours?"  Mr. Cheun hesitantly answered, "[m]ine is the grey one."  The following rapid fire questioning occurred,

> K. SMALL:   All right.  What, where-, I don't see a grey one.
> A. CHEUN:   Over there.
> K. SMALL:   You don't have any guns, drugs, or contraband in there?
> A. CHEUN:   No.
> K. SMALL:   Would you give me permission to search it?
> A. CHEUN:   You can look in there, yes.
> K. SMALL:   All right.  Why don't you stay out here for me, all right?

The foregoing exchange can hardly be deemed to be consensual.  Agent Small is immediately heard ripping wrapping paper and going through the items in the bags. While the government argues that Agent Small happened to view a pipe with residue on it

4

in plain view, Mr. Cheun disputes this representation by Agent Small and indeed argues that averment is simply false. However, even if this Court were to believe Agent Small's version, Mr. Cheun submits that since Agent Small is a federal agent, he could not arrest Mr. Cheun for a state misdemeanor offense absent evidence that Agent Small was cross-deputized by state law enforcement authorities, specifically as it relates to Mr. Cheun's case. *See* N.M.S.A. § 29-1-11.[1]

Agent Small's search and seizure of Mr. Cheun's bags was unlawful as any purported consent was involuntary, not the product of free will and the result of an unlawful detention. Therefore, any evidence derived therefrom must be suppressed. "[A]s a general rule any evidence obtained as a result of [an unlawful] detention must be excluded as fruit of the poisonous tree." *United States v. Santana-Garcia*, 264 F.3d 1188, 1191 (10th Cir. 2001).

---

[1] It is important to note that New Mexico State Law requires "all persons who are duly commissioned Federal Law Enforcement Officers employed by the Federal Bureau of Investigation, Drug Enforcement Administration [other Federal Law Enforcement Agencies] who are assigned in New Mexico and who are required to be designated by the county sheriff on a case-by-case basis in the county in which they are working, are recognized and authorized to act as New Mexico peace officers and have all the powers of New Mexico peace officers to enforce state laws in New Mexico" and "the Department of Public Safety shall maintain a registry that lists the name and affiliated federal agency of every federal law enforcement officer recognized and authorized to act as a New Mexico peace officer pursuant to provisions of this subsection." See N.M.S.A. § 29-1-11(E). Furthermore, New Mexico State Law requires "no person shall assume or exercise the functions, powers, duties, and privileges incident and belonging to the office of special deputy sheriff, marshal, policeman or other peace officer without first having received an appointment in writing from a person authorized by law to appoint special deputy sheriffs, marshals, policeman, or other peace officers." See N.M.S.A. § 29-1-9. Consequently, the Law of the State of New Mexico required that the employees of the United States, including Agent Small receive "an appointment in writing" as Peace Officers from the Sheriff of Bernalillo County – specifically regarding the prosecution of Anthony Cheun ("case-by-case basis").

**Agents were required to Advise Mr. Cheun of his Constitutional Rights Pursuant to *Miranda v. Arizona*, before the continued Questioning of him After the Arrest of Mr. Maddaleni**

Law enforcement officials must give the Miranda warnings to a person subject to "custodial interrogation." *United States v. Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000)(citing *Miranda v. Arizona,* 384 U.S. at 444).  A person is in custody if "his freedom of action is curtailed to a degree associated with formal arrest." *United States v. Hudson*, 210 F.3d at 1190 (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).  The court must examine "whether a reasonable [person] in the suspect's position would have understood his situation . . . as the functional equivalent of formal arrest." *United States v. Hudson*, 210 F.3d at 1190.  The Tenth Circuit has articulated the "[t]wo discrete inquiries . . . essential to the determination" of custody: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Erving* L., 147 F.3d 1240, 1245 (10th Cir. 1998).

"In order to determine whether or not a person is in custody for *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966), purposes, a court must examine all relevant facts, the only inquiry being how a reasonable person in the suspect's position would have understood his situation." *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993). If, from an objective viewpoint, the detainee would reasonably believe freedom of

action had been curtailed to a degree associated with formal arrest, then custody exists. *Id.*

In this case, after observing Mr. Maddaleni get arrested and subsequently being surrounded by two law enforcement agents in a cramped space, a person in Mr. Cheun's position would not have felt free to leave. Indeed, his only egress was blocked. Agent Small moved in closer to him and quickly ordered Mr. Cheun to tell him where his bag was located. Mr. Cheun represents that he glanced at Agent Perry and then back at Agent Small and then told him where his bag was located. Mr. Cheun was in custody for purposes of *Miranda*, and Agent Small was required to advise him of his rights. The failure to do so, rendered Mr. Cheun's statements, any purported consent and the evidence seized thereafter inadmissible as violative of Mr. Cheun's Fifth Amendment rights pursuant to *Miranda v. Arizona*.

### The Evidence Seized as a Result of Mr. Cheun's involuntary Consent Resulted from a Constitutional Violation and Thus Should be Suppressed

When evidence is obtained in violation of a person's Fourth or Fifth Amendment rights, the police will generally be prohibited from using that evidence in a criminal prosecution of that person. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 332-33 (2006)("[T]he exclusionary rule has been used primarily to deter certain Fourth and Fifth Amendment violations, including, e.g., unconstitutional searches and seizures and

confessions exacted in violation of the right against self-compelled incrimination or due process"); *United States v. Calandra*, 414 U.S. 338, 347 (1974)("Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."). The exclusionary rule will apply if the defendant can show, by a preponderance of the evidence, a constitutional violation and a causal nexus between the violation and the evidence sought to be excluded. *See United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006).

The alleged consent provided by Mr. Cheun was not voluntary but rather the product of coercion and a violation of a constitutionally protected right. When directed by Agent Small to tell him which bag belonged to Mr. Cheun and if he would agree to have the agent search it, Mr. Cheun was detained on the train. He was in de facto custody, without the benefit of an advisement of his constitutional rights. Therefore, the evidence seized subsequent to the rapid fire questioning, and the purported consent to search and, must be suppressed as violative of Mr. Cheun's Constitutional rights.

## CONCLUSION

Wherefore, for the foregoing reasons and the reasons set forth in his motion to suppress evidence, defendant Cheun urges this Court to suppress evidence seized on January 29, 2014, from his bags as his constitutional rights pursuant to the Fourth and Fifth Amendment were violated.

Respectfully Submitted,

<u>electronically filed 9/7/14</u>
Erlinda O. Johnson
Attorney for Anthony Cheun
1110 2nd Street N.W.
Albuquerque, N.M. 87102
(505) 792-4048

I hereby certify that a true and correct
Copy of the foregoing was provided
To counsel for the government, via CM/ECF
This 7th day of September, 2014.

_____/s/_____
Erlinda O. Johnson
Attorney at Law